Anthony CESARE

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Bureau of Driver Licensing, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 20, 2010.

Decided Jan. 12, 2011.

Publication Ordered March 11, 2011.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellant.

Richard H. Galloway and Lisa G. Monzo, Greensburg, for appellee.

1. 75 Pa.C.S. § 1543(b).

2. 75 Pa.C.S. § 1543(c)(2). Section 1543(c)(2) of the Vehicle Code provides in part:

> If the department's records show that the person was under revocation on the date of

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Appellant Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department), appeals from the March 16, 2010, order of the Court of Common Pleas of Westmoreland County (trial court), sustaining the statutory appeal of Appellee Anthony Cesare (Licensee) and reinstating Licensee's vehicle operating privilege. We reverse.

The pertinent facts in this case center around Licensee's violation of Section 1543(b) of the Vehicle Code,[1] (relating to driving while operating privilege is suspended or revoked) that occurred on *September 2, 1998*, and his subsequent conviction on November 24, 1998. (Reproduced Record (R.R.) at 136a.)

On September 2, 1998, Licensee was arrested for a violation of Section 1543(b) of the Vehicle Code for driving while his operating privileges were suspended. The following day, on September 3, 1998, Licensee was again arrested for violating Section 1543(b). On November 24, 1998, Licensee was convicted of both violations. By official notices with "mail dates" of December 16, 1998, and January 14, 1999, the Department imposed two separate two-year "add-on" revocations of Licensee's operating privilege, one for the September 2, 1998 violation and one for the September 3, 1998 violation, in accordance with Section 1543(c)(2) of the Vehicle Code.[2] (*Id.*) Licensee filed a timely statutory appeal of the revocation imposed as a

> violation, and had not been restored, the department shall revoke the person's operating privilege for an additional two-year period.

result of his conviction for the September 2, 1998 violation.[3] (*Id.* at 117a.)

During this same time period, Licensee appealed the underlying conviction for the September 2, 1998 violation to the Superior Court, which ultimately affirmed the trial court's conviction. Thereafter, in June 2002, Licensee withdrew his appeal of the Department's license revocation relating to the September 2, 1998 violation, and the Department reimposed the revocation, effective October 3, 2002. (*Id.* at 138a.) Without consulting his attorney, Licensee filed an untimely statutory appeal of the reimposed revocation. (*Id.*) After consulting with his attorney, Licensee withdrew his appeal, and the trial court issued an order, dated February 14, 2003, and mailed February 24, 2003, indicating that the appeal was withdrawn. (*Id.* at 177a). The Department received notification from the trial court on February 28, 2003, by way of the order, that the appeal was withdrawn. (*Id.*).

The Department took no further action relating to the September 2, 1998 violation until August 10, 2006, almost forty-two months later, when it reimposed the two-year revocation, effective July 7, 2008.[4] (*Id.* at 139a.) Licensee again appealed to the trial court, which conducted a *de novo* hearing. (*Id.* at 169a.)

At the hearing, Licensee argued that the Department's almost forty-two-month delay in reimposing the revocation constitut-ed unreasonable delay on the part of the Department, and that Licensee, a self-employed businessman, was prejudiced by the delay. As to the issue of prejudice, Licensee took the position that following his withdrawal of the appeal in February 2003, he expected the Department to reimpose the two-year revocation related to the September 2, 1998 violation. In anticipation of an additional two-year revocation, Licensee took steps to sell his water treatment systems business because he believed that it would be difficult to continue to work for this business if he were unable to drive for that length of time. As time passed, he began to believe that the Department may not reimpose the revocation. During that same time period, the Department unexpectedly reinstated Licensee's operating privileges for a short period of time. Due to his belief that his license may not be revoked as a result of the September 2, 1998 violation, Licensee abandoned his plans to sell his business. When the Department eventually moved to reimpose the revocation in 2008, the financial climate had changed. Licensee took the position that his ability to sell his business was severely hampered by the delay, and that this apparent "inability" to sell his business constituted prejudice.

In support of that argument, Licensee's attorney, Richard W. Schmizzi, Esquire, testified for Licensee. (*Id.* at 20a.) Mr. Schmizzi testified that Licensee has owned a business known as Specialty Wa-

---

3. It appears that Licensee also filed a timely statutory appeal of the revocation imposed as a result of his conviction for the September 3, 1998 violation, and he may have appealed the underlying conviction. (R.R. at 136a.) Regardless, the Department reimposed the revocation relating to the September 3, 1998 violation on April 11, 2003, effective May 16, 2003, and Licensee did not file a timely appeal of that revocation. (*Id.* at 138a.)

4. That is not to say that the Department took no action against Licensee during this time period. Rather, the record reflects that Licensee's operating privileges were suspended for violations that occurred on June 24, 2000 (relating to driving under the influence and careless driving), July 27, 2001 (relating to failure to respond), and March 20, 2002 (relating to chemical test refusal). (R.R. at 137a–40a) The Department restored Licensee's operating privileges relating to these violations pending appeal. (*Id.*)

ter for approximately thirty (30) years. (*Id.* at 27a.) He testified that as a result of Licensee's upcoming two-year revocation of his operating privilege, Licensee considered selling his business. (*Id.* at 30a.) He testified that Licensee was in discussion with a potential buyer around the time the suspension of his driver's license was "lifted" in 2003.[5] (*Id.* at 39a.) Mr. Schmizzi testified that Licensee had not entered into a formal agreement with the potential buyer, but Licensee was in discussions regarding a sale of his business. (*Id.*) Because the Department had reissued a license to Licensee and because of the amount of time that had passed since Licensee received any notice from the Department regarding the revocation of his operating privilege, Licensee decided not to sell his business. (*Id.* at 43a–44a.) Mr. Schmizzi did not testify to any steps undertaken by Licensee to sell his business after receiving notice in 2008 that the Department intended to reimpose the two-year revocation. Rather, in support of the contention that Licensee was no longer able to sell his business, Mr. Schmizzi merely testified that due to changes in the financial market, it would be more difficult to sell the business at this time. (*Id.* at 54a–59a.) At the conclusion of the hearing, the trial court entered its order, sustaining Licensee's statutory appeal and ordering the Department to reinstate Licensee's operating privileges. (*Id.* at 169a.)

Following the Department's appeal to this Court, the trial court filed an opinion pursuant to Pa. R.A.P. 1925(a) on May 19, 2010. (*Id.* at 176a.) The trial court concluded that Licensee proved he was prejudiced by the Department's forty-two-month delay in revoking Licensee's operating privilege. (*Id.* at 179a.) The trial court noted that the Department presented no testimony to rebut the testimony and evidence presented by Licensee. (*Id.*)

■ On appeal,[6] the Department argues that the trial court erred in sustaining Licensee's appeal because Licensee failed to prove that he was prejudiced by the Department's delay in reimposing the two-year revocation of Licensee's operating privilege. Specifically, the Department contends that Licensee failed to establish that he changed his circumstances as a result of the delay, and any discussions Licensee had regarding a potential sale of his business were too speculative to constitute prejudice. The Department also contends that due to Licensee's operating history and other pending revocations and suspensions, Licensee was not prejudiced by the Department's delay in reinstating the two-year revocation.

■ To sustain an appeal of a license suspension based on delay, a licensee must prove that: (1) an unreasonable delay chargeable to the Department led the licensee to believe that his operating privilege would not be impaired; and (2) prejudice would result by having the licensee's operating privilege suspended after such delay. *Terraciano v. Dep't. of Transp., Bureau of Driver Licensing*, 562 Pa. 60, 66, 753 A.2d 233, 236 (2000). Once a licensee raises the delay defense, the Department

---

5. Effective October 23, 2001, Licensee's operating privilege was restored temporarily by the Department pursuant to Section 4 of the Act of December 12, 1994, P.L. 1048, commonly referred to as "Act 143." (R.R. 32a, 99a, 137a.)

6. This Court's scope of review is "limited to determining whether the findings of fact are supported by competent evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision." *Dep't of Transp., Bureau of Licensing v. Grubb*, 152 Pa.Cmwlth. 178, 618 A.2d 1152, 1153 n. 3 (1992).

must then prove that the delay was caused by some factor other than mere administrative inaction. *Grover v. Dep't. of Transp., Bureau of Driver Licensing,* 734 A.2d 941, 943 (Pa.Cmwlth.1999). If the Department meets this burden, the licensee's appeal should be dismissed. *Id.* If the Department fails to meet this burden, then the burden shifts to the licensee to prove prejudice. *Id.*

Here, the Department concedes that the trial court's finding that the Department was chargeable for the forty-two-month delay was supported by substantial evidence, and the Department does not dispute that there was delay chargeable to the Department. Therefore, the burden shifts to Licensee to prove he was prejudiced as a result of the Department's delay.

█ Prejudice is established when the licensee shows that he changed his circumstances to his detriment, believing that his privileges were no longer impaired due to the excessive delay. *Fisher v. Dep't. of Transp., Bureau of Driver Licensing,* 682 A.2d 1353, 1356 (Pa.Cmwlth.1996). In other words, a licensee proves prejudice by demonstrating that he changed his circumstances to his detriment in reliance on the belief that his operating privilege would not be impaired. *Terraciano,* 562 Pa. at 68, 753 A.2d at 237. Contentions of prejudice that are both speculative in nature and unrelated to the administrative delay do not establish prejudice. *Dep't of Transp., Bureau of Traffic Safety v. William A. Kirk,* 48 Pa.Cmwlth. 429, 410 A.2d 95, 97 (1980). Prejudice may be established when a licensee has changed jobs to a position that requires driving as part of the new job's duties only later to have his operating privilege impaired after a long delay. *Bennett v. Dep't. of Transp., Bureau of Driver Licensing,* 163 Pa.Cmwlth. 664, 642 A.2d 1139, 1141 (1994), *appeal*

*dismissed,* 543 Pa. 623, 673 A.2d 921 (1996); *see also Dep't. of Transp. v. Hosek,* 3 Pa.Cmwlth. 580, 284 A.2d 524, 527 (1971) (holding that licensee who, in reliance upon Department's inaction, changed jobs to become truck driver demonstrated requisite prejudice).

In *Fisher,* the licensee testified that he repeatedly contacted the Department to determine the status of his license and was assured that it had been restored and that there was no problem with his license. Based upon the Department's assurances and its failure to reinstate an untimely appealed suspension, the licensee opened a delivery service, which required him to have a driver's license to make deliveries for the business. Thereafter, following a delay of three and a one-half (3½) years, the Department attempted to reimpose the earlier suspension. The trial court concluded that the suspension of the licensee's license at that time would force the licensee to close his business. Because there was substantial evidence of record that the delay in reimposing the suspension was attributable to the Department and that the licensee would suffer prejudice if his license were now suspended, we affirmed the trial court's order sustaining the licensee's appeal.

█ The matter presently before the Court, however, does not involve a change in circumstances as contemplated by *Fisher, Terraciano,* and their progeny. In actuality, although Licensee contends that he changed his circumstances by *not* selling his business when he had an opportunity, Licensee remains in the *same* position in which he had been *at the time that he was convicted of the September 2, 1998 violation.* As discussed above, prejudice is established when a licensee changes his circumstances under a belief that his license would not be suspended or revoked (because of the length of time that had passed

without the Department taking action to revoke or suspend the licensee's operating privileges), only to then suffer the loss of his job or the closing of his business as a result of the Department's delayed imposition of a suspension or revocation. *See Fisher*, 682 A.2d at 1356. The circumstances that exist at the point in time at which a licensee is convicted are the relevant circumstances for purposes of establishing prejudice, because it is the conviction that is the triggering point for the Department's imposition of a suspension or revocation. Licensee attempts to establish a change in circumstances *not* by examining the circumstances that existed at the time of the conviction, but by selecting subsequent, self-serving circumstances as the starting point for the analysis. We must reject such an approach. Here, Licensee made a conscious decision to remain in the same position he was in at the time of his conviction. As a result, cases such as *Fisher* and *Terraciano* do not support a determination of prejudice.

Licensee does not direct this Court to any case where an appeal of a license suspension or revocation was sustained based upon prejudice in the form of a lost business opportunity that resulted from a licensee's decision *not* to change his circumstances. Moreover, even if we were to determine that a subsequent decision to forego a business opportunity may constitute a change of circumstances (which we decline to do under these circumstances), Licensee would still not be successful. The record is devoid of any evidence that, following notification that the Department intended to reimpose the two-year revocation, Licensee made any attempt to sell his business at that time but was unable to do so. Without such evidence, Licensee's prejudice is entirely speculative. *See Kirk*, 410 A.2d at 97.

Finally, between the time that Licensee's appeal was withdrawn on February 14, 2003, and the letter sent by the Department on August 10, 2006, reinstating the revocation, Licensee was facing four new suspensions of his operating privilege. (*Id.* at 69a, 98a, 137a–39a.) Thus, it is hard to imagine how delay in the imposition of the revocation for this one violation caused prejudice in light of the four suspensions looming in Licensee's future.

■ We disagree with Licensee that the Department waived the issue of Licensee's lack of prejudice due to pending revocations and/or suspensions during the delay in reinstating the two-year revocation of Licensee's operating privilege. Rule 302(a) of the Pennsylvania Rules of Appellate Procedure provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." *See also Lower Paxton Twp. Bd. of Supervisors v. Okonieski*, 153 Pa. Cmwlth. 36, 620 A.2d 602, 604 (1993) (holding that failure to raise issue below or in statement of matters complained of on appeal constitutes waiver of that issue). In *Wert v. Department of Transportation, Bureau of Driver Licensing*, 821 A.2d 182, 186 n. 10 (Pa.Cmwlth.2003), this Court noted that "issues, not reasoning, are to be preserved." We further explained:

> We do not believe that Pa. R.A.P. 302(a) requires a litigant to make identical arguments at each stage of his case. The issue must be preserved, but this does not mean every argument is written in stone at the initial stage of litigation. Thus, logic dictates that an appellant can raise new arguments so long as they relate to the same issue.

*Id.* n. 9 (citations omitted.)

A review of the record reveals that throughout these proceedings, the Department has maintained that Licensee was not prejudiced by the delay and has includ-

ed Licensee's driving history as evidence. On appeal to this Court, the Department continues to press the issue that Licensee failed to establish prejudice. In developing that issue, the Department now focuses, in part, on the additional suspensions of operating privileges that were to be imposed on Licensee for other subsequent violations, arguing that delay in reimposing the subject two-year revocation could not have resulted in prejudice given the other pending suspensions. Based upon these facts, the Department has not waived the issue of prejudice based upon Licensee's ongoing driving history and pending revocations and/or suspensions. Licensee's certified driving history contains multiple revocations and suspensions of Licensee's operating privilege yet-to-be imposed, which, taken with the fact the Department sought to reimpose a two-year revocation of Licensee's operating privilege, establish that Licensee was not prejudiced by the Department's delay.

Accordingly, we must reverse the order of the trial court.

### ORDER

AND NOW, this 12th day of January, 2011, the order of the Court of Common Pleas of Westmoreland County, dated March 16, 2010 is hereby REVERSED.