# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Nercesian, Jr.        :
                               :
         v.               : No. 1795 C.D. 2016
                               : Submitted: May 5, 2017
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing,      :
                               :
          Appellant      :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                        **FILED:  June 12, 2017**

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Bureau) appeals from the September 27, 2016 order of the Delaware County Court of Common Pleas (Trial Court) sustaining the appeal of Richard Nercesian, Jr.[1] (Licensee), and reinstating Licensee's operating privileges on the basis that the Bureau unreasonably delayed suspending Licensee's license to operate a motor vehicle following Licensee's entry of a plea of guilty for leaving the scene of an accident on May 8, 2015 in violation of Section 3743(a) of the Vehicle Code, 75 Pa. C.S. § 3743(a). For the following reasons, we reverse the Trial Court.[2]

---

[1] Licensee was precluded from filing a brief by April 28, 2017 order of this Court for failure to comply with this Court's April 3, 2017 order directing him to file a brief within 14 days.

[2] This Court's review of a trial court order in an appeal from a license suspension is limited to determining whether the trial court's findings are supported by competent evidence and whether

The facts in this matter are not in dispute. On March 26, 2016, Licensee entered a plea of guilty to a violation of Section 3743 of the Vehicle Code, 75 Pa. C.S. § 3743. As a civil collateral consequence of Licensee's guilty plea, Section 1532(b) of the Vehicle Code requires that the Bureau "shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's conviction." 75 Pa. C.S. § 1532(b)(1). The Bureau received a certified record of Licensee's conviction from the Delaware County Office of Judicial Services (OJS) on August 2, 2016. The Bureau imposed a six-month suspension of Licensee's operating privileges by notice mailed to Licensee on August 10, 2016. On August 19, 2016, Licensee filed an appeal with the Trial Court and the Trial Court held a *de novo* hearing on September 27, 2016.

Before the Trial Court, Licensee testified that he had believed his suspension began on the day he pled guilty and that he had stopped driving as of that date and had hired others to drive him. (Hearing Transcript (H.T.) at 13-14.) Licensee further testified that his business consisted of high-end detailing of motor vehicles and that as a part of his service, he picks up the vehicle, drives the customer where he or she needs to go, and then delivers the finished vehicle to the customer. (*Id*. at 14.) Licensee testified that although he had hired others to assist him during the five months and one week in which he believed he had been serving his license suspension, he was entering his busy season, and it would create a strain on his business to employ yet more people for an additional six months. (*Id*. at 15.) On cross-examination, Licensee stated that he received notice of his suspension by letter dated August 10, 2016 and that this was when he first became

---

the trial court committed an error of law or an abuse of discretion. *Cesare v. Department of Transportation, Bureau of Driver Licensing*, 16 A.3d 545, 548 n.6 (Pa. Cmwlth. 2011).

2

aware that he was not already serving his suspension and that his suspension had not gone into effect on the date of his conviction. (*Id*. at 16-17.) Licensee also testified on cross-examination that he had not submitted his license to the Bureau, which he first learned was necessary when he received the August 10, 2016 notice, and that he was aware that the Bureau imposed license suspensions. (*Id*.)

Following the evidentiary part of the hearing, the Trial Court permitted Licensee and the Bureau to submit legal argument orally before the Court. The Trial Court then entered an order, both orally and written, granting Licensee's appeal and reinstating his license to operate a motor vehicle. The Bureau appealed. On January 23, 2017, the Trial Court issued a Rule 1925(a) opinion with a thorough discussion of the evidentiary record and the legal arguments made orally before the Court.

In reaching the conclusion that Licensee's suspension should be lifted, the Trial Court first reviewed the test established to sustain an appeal based on an unreasonable delay in imposing the suspension. Where an unreasonable delay is alleged, the licensee has the burden of demonstrating: (1) an unreasonable delay chargeable to the Bureau, (2) which led the licensee to believe that the licensee's operating privileges would not be impaired, and that would cause the licensee prejudice by having the operating privileges suspended after the delay. *Terraciano v. Department of Transportation, Bureau of Driver Licensing*, 753 A.2d 233, 236 (Pa. 2000) (holding that a seven-year lapse in the proceeding attributable to the Bureau, during which licensee obtained a commercial driver's license that she depended upon for employment, satisfied the criteria for sustaining licensee's appeal and reinstating her operating privileges).

3

The Trial Court concluded that Licensee had established that he was under the belief that he had only three weeks remaining on his suspension when he received notice from the Bureau that the suspension had not in fact started and that Licensee had established that he would be prejudiced by having his operating privileges suspended for six months following the delay between his conviction and receipt of the suspension notice from the Bureau.

However, in the instant matter, there is no dispute that the delay was not chargeable to the Bureau. Although Licensee pled guilty on March 26, 2016, OJS did not certify the record of his conviction to the Bureau until August 2, 2016. The Bureau notified Licensee of his suspension by August 10, 2016 notice. Therefore, the only delay attributable to the Bureau is the eight day lapse between certification by OJS and the mail date on the notice to Licensee. The Trial Court did not overlook this element of the unreasonable delay test, but concluded that considerations of equity and due process necessitated the reinstatement of Licensee's operating privileges.

The Trial Court was particularly persuaded by a series of United States Supreme Court cases addressing the requirement under the Fourth Amendment to the United States Constitution that agents of the government obtain a warrant before conducting a search. In *Birchfield v. North Dakota*, __ U.S. __, 136 S. Ct. 2160 (2016), Justice Sotomayor, in an opinion concurring in part and dissenting in part joined by Justice Ginsburg, concurred in the majority's holding that the search-incident-to-arrest exception to the Fourth Amendment did not permit warrantless blood tests, but dissented as to the majority's holding that the exception did permit warrantless breath tests of drivers suspected of operating a motor vehicle under the influence of alcohol or other impairing substances. *Id.* at

4

__, 136 S. Ct. at 2187. In reasoning that the search-incident-to-arrest exception to the Fourth Amendment should not apply to breath tests, Justice Sotomayor relied upon an ongoing discussion in the United States Supreme Court's Fourth Amendment jurisprudence regarding the increased ease of obtaining a warrant due to advances in technology that have revolutionized life and communication in these United States. *Id.* at __, 136 S. Ct. at 2192. The same advances, Justice Sotomayor reasoned, would allow a warrant to be obtained for a breath test during the two-hour window within which the government defendants required a breath test to be administered following the point in time when a motorist was suspected of driving under the influence of alcohol or other impairing substances. *Id.* at __, 136 S. Ct. at 2192-93.

The cases relied upon by Justice Sotomayor include *Missouri v. McNeely*, __ U.S. __, 133 S. Ct. 1552 (2013) (plurality), where a majority of the Court concurred in the judgment that the natural speed at which the human body metabolizes alcohol does not give rise to a *per se* exigency exception to the Fourth Amendment mandate that agents of the government obtain a warrant to conduct a search. In *McNeely*, Chief Justice Roberts authored an opinion concurring in part and dissenting in part joined by Justices Breyer and Alito, which discusses how the use of telephonic and electronic warrants have greatly reduced the hurdles police officers in the field previously encountered when caught between the exigencies of the circumstances and the restraints embodied by the Fourth Amendment. *Id.* at __, 133 S. Ct. at 1572-1573. The Court expanded on this discussion in *Riley v. California*, __ U.S. __, 134 S. Ct. 2473 (2014), where the Court held that the Fourth Amendment to the United States Constitution mandated that police obtain a warrant before searching a cellphone seized incident-to-arrest. In reaching its

5

holding, the Court's reasoning was multifaceted; however, two grounds discussed by the Court include the efficiency with which police officers and other agents of the government are now able to obtain warrants due to the advances in how data is transmitted and the rejection of the argument that a search of cellphone data without a warrant should be permitted if the same information could have been obtained from an analog counterpart, such as permitting the calendar on a cellphone to be searched because the person under arrest could have previously carried a pocket calendar. *Id*. at __, 134 S. Ct. at 2493-2494.

Based on the United States Supreme Court's reasoning regarding the duties of government actors as a result of advances in technology, the Trial Court concluded that the length of time within which it took the Bureau to impose Licensee's suspension when it could have received the certification of Licensee's conviction by the touch of a button was unreasonable. In the instant matter, the United States Supreme Court's consideration of how technological changes have affected the analysis of common law exceptions to the right of the people and restraint on the government enshrined in the Fourth Amendment to the United States Constitution does not offer a persuasive analogy for several reasons. First, the touchstone of the Fourth Amendment is reasonableness. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated…" (emphasis added)). This touchstone has consistently made an examination of the totality of circumstances an inherent part of Fourth Amendment jurisprudence, even where the totality of circumstances is addressed simply to exclude its consideration as an analytical tool in favor of a categorical or a bright-line rule approach. *See, e.g., Riley v. California*, __ U.S. __, 134 S. Ct. at 2483-2485. The

6

reasonableness standard set forth in the text of the Fourth Amendment likewise explicitly implicates the use of discretion by the courts. *Id.* By contrast, the analysis of whether or not a licensee's operating privileges are suspended is not guided by a reasonableness standard but results from a binary operation of statute that excludes the exercise of discretion by the courts. 75 Pa. C.S. § 1532(b)(1); *see also, e.g., Banks v. Department of Transportation, Bureau of Motor Vehicles*, 856 A.2d 294, 296 (Pa. Cmwlth. 2004). Although the issue of whether a licensee's operating privileges should be restored inquires whether there has been an "unreasonable delay," this inquiry posits a narrow exception to the statute that hinges on specific, concrete facts that must be present in each application of the exception. Second, the Fourth Amendment to the United States Constitution speaks of a right held by the people and places a restraint on the actions of the government; a license, however, is a privilege conferred under specific terms established by the Vehicle Code, and it shall be rescinded when those terms are violated. Third, the ongoing discussion in the United States Supreme Court's Fourth Amendment jurisprudence regarding the changes technology has wrought in our society and the implication for our understanding of common law exceptions to the Fourth Amendment cannot be divorced from its context. The aegis of the Fourth Amendment is a constant. However, the context within which a court scrutinizes an issue before it will always shape its analysis; the scrutiny a court must apply in a penal matter to an examination of common law precedent establishing exceptions to rights expounded by our Constitution differs substantially from an examination of regulatory statutes in a remedial matter. *See, e.g., Kozieniak v. Department of Transportation, Bureau of Driver Licensing*, 100 A.3d 326, 330-31 (Pa. Cmwlth. 2014).

7

We do not wish to suggest that changes in our society and resulting expectations of the public will never inform analysis by the courts of the duties of state and local government when enforcing remedial statutes to rescind a privilege conferred. Rather, our rejection of the discussion in *Birchfield*, *Riley*, and *McNeely*, as a persuasive analogy in the instant matter turns primarily upon our reliance on this Court's *en banc* decision in *Gingrich v. Department of Transportation, Bureau of Driver Licensing*, 134 A.3d 528 (Pa. Cmwlth. 2016), where an unreasonable delay attributable to the courts rather than the Bureau was directly addressed.

In *Gingrich*, the issue before this Court was whether a delay attributable to the clerk of courts rather than the Bureau, much like the delay here, could satisfy the first element of the "unreasonable delay" test. This Court held in *Gingrich* that the fact that the "unreasonable delay" was not attributable to the Bureau is immaterial where a licensee demonstrated that (1) the entity responsible for certifying a conviction to the Bureau failed to do so for an extraordinary extended period of time, (2) the licensee had no further Vehicle Code violations for a significant number of years before the conviction was certified to the Bureau, and (3) the licensee was prejudiced by the delay.[3] *Id*. at 534; *see also Currie v. Department of Transportation, Bureau of Driver Licensing*, 142 A.3d 186, 189 (Pa. Cmwlth. 2016). However, this exception to the rule that an "unreasonable delay" must be attributable to the Bureau was limited in *Gingrich* to extraordinary circumstances. *Id*.

---

[3] We granted relief in *Gingrich*, holding that the licensee demonstrated a gap of ten years between her conviction and 2014 suspension, a lack of additional issues since her last conviction in 2006 and prejudice, and that therefore the licensee's "suspension has lost the underlying public safety purpose and now simply is a punitive measure sought to be imposed too long after the fact." *Id*. at 535.

8

In the instant matter, Licensee has not demonstrated the presence of extraordinary circumstances. The gap between his conviction and the Bureau's receipt of the certification of his conviction and notice to Licensee was roughly five months, which, while not ideal, was certainly not an "extraordinary extended period of time." Therefore, the Trial Court erred in not denying Licensee's appeal because, as we stated in *Department of Transportation, Bureau of Driver Licensing v. Green*, 546 A.2d 767 (Pa. Cmwlth. 1988):

> Although, paraphrasing Ralph Waldo Emerson, a foolish consistency may be the hobgoblin of little minds, this court can do no better than to adhere to the steady line of decisions in which we have held that, where [the Bureau] has not been guilty of administrative delay, judicial system delay in notifying [the Bureau] will not operate to invalidate driver's license suspensions merited by Vehicle Code convictions. *Department of Transportation, Bureau of Traffic Safety v. Davis*, [527 A.2d 607 (Pa. Cmwlth. 1987)] (seventeen months judicial system delay); *Department of Transportation, Bureau of Traffic Safety v. Kazil*, [510 A.2d 148 (Pa. Cmwlth. 1986)] (two years judicial system delay); *Department of Transportation, Bureau of Traffic Safety v. Chrzanowski*, [505 A.2d 1129 (Pa. Cmwlth. 1986)] (two-and-one-quarter years judicial system delay); *Schultz v. Department of Transportation, Bureau of Traffic Safety*, [488 A.2d 408 (Pa. Cmwlth. 1985)] (four years judicial system delay); *Department of Transportation, Bureau of Traffic Safety v. Lyons*, [453 A.2d 730 (Pa. Cmwlth. 1982)] (seventeen months judicial system delay).
>
> The principle steadfastly applied in these decisions is consistent with sound policy. Under the Vehicle Code, [the Bureau] is the agency made responsible for imposition of the sanctions which the law uses to keep

9

unsafe drivers off the highways for stated periods. This court has held that a material breach by [the Bureau] of that responsibility will invalidate the legal effectiveness of the sanction. If [the Bureau] too often failed to meet the responsibility thus focused upon it, the locus of fault would be clear and executive and legislative remedies could be directed at [the Bureau]. But a very different situation would prevail if the effectiveness of the Vehicle Code sanctions became dependent upon scores of court clerks and hundreds of functionaries within the minor judiciary. This court's rule therefore protects the vehicle safety laws from vulnerability to delays within a system where detection and correction of official failure would be much more difficult.

*Green*, 546 A.2d at 768-769; *see also Pokoy v. Department of Transportation, Bureau of Driver Licensing*, 714 A.2d 1162, 1164 (Pa. Cmwlth. 1998) (licensee not entitled to relief where only 24 days of the delay was attributable to the Bureau and the remainder of the four-year long delay was attributable to the clerk of courts); *compare with Capizzi v. Department of Transportation, Bureau of Driver Licensing*, 141 A.3d 635, 643 (Pa. Cmwlth. 2016) (suspension of licensee's operating privilege seven years and 10 months after his conviction was an unreasonable delay, even though the delay was attributable to the court rather than the Bureau).

Accordingly, we reverse the order of the Trial Court.

_____
**JAMES GARDNER COLINS, Senior Judge**

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Nercesian, Jr. :
 :
 v. : No. 1795 C.D. 2016
 :
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Driver Licensing, :
 :
 Appellant :

# **O R D E R**

AND NOW, this 12th day of June, 2017, the order of the Delaware County Court of Common Pleas in the above-captioned matter is REVERSED.

_____
**JAMES GARDNER COLINS, Senior Judge**