# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jaclyn Gingrich,               :
             Appellant       :
                              :
              v.               :    No. 748 C.D. 2015
                              :    Argued:  December 9, 2015
Commonwealth of Pennsylvania,     :
Department of Transportation,       :
Bureau of Driver Licensing          :

BEFORE:     **HONORABLE DAN PELLEGRINI,** President Judge[1]
                 **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge[2]
                 **HONORABLE RENÉE COHN JUBELIRER,** Judge
                 **HONORABLE ROBERT SIMPSON,** Judge
                 **HONORABLE MARY HANNAH LEAVITT,** Judge[3]
                 **HONORABLE P. KEVIN BROBSON,** Judge
                 **HONORABLE PATRICIA A. McCULLOUGH,** Judge

**OPINION BY**
**JUDGE LEADBETTER**                  **FILED:  March 30, 2016**

Jaclyn Gingrich (Gingrich) appeals from the April 24, 2015 Order of the Court of Common Pleas of Cumberland County (common pleas) that denied her appeal from a one-year suspension of her operating privilege imposed by the Pennsylvania Department of Transportation (Department). The Department suspended Gingrich's license as required by Section 3804(e)(2)(i) of the Vehicle Code (Code), 75 Pa. C.S. §3804(e)(2)(i), based on its receipt of a report of

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[3] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

Gingrich's conviction for violating Section 3802 of the Code, 75 Pa. C.S. §3802, relating to driving under influence of alcohol or controlled substance (DUI). For the reasons that follow, and based on the specific circumstances of this appeal, we reverse.

By official notice mailed on October 24, 2014, the Department imposed a one-year suspension of Gingrich's operating privilege, effective November 28, 2014, as a consequence of receiving a report that Gingrich had been convicted on August 24, 2004,[4] of violating 75 Pa. C.S. §3802(a)(1) (relating to DUI- general impairment) on May 8, 2004. (R.R. at 4-6). Gingrich timely appealed to common pleas.

Common pleas conducted a hearing de novo on February 20, 2015, at which Department counsel advised the court that the report of Gingrich's 2004 DUI conviction was transmitted to the Department on October 10, 2014. (R.R. at 11). The Department acted timely upon receipt of the of conviction report and issued the suspension notice within ten days.

Gingrich testified that she was arrested for DUI in York County in May, 2004, but that she did not recall being convicted of DUI on August 24, 2004 (R.R. at 18). She testified that her operating privilege had been restored on February 28, 2005 (R.R. at 21). Gingrich testified further that she had committed another DUI violation in Cumberland County in 2006 and that she also had received a suspension for a chemical test refusal (R.R. at 22-23). As a result, she again lost her operating privilege. The Department returned her license to her on February

---

[4] Gingrich indicates in her brief at pages 6-7 that she pleaded guilty and was sentenced on October 19, 2004 by the Court of Common Pleas of York County. However, given our disposition of this appeal the discrepancy between the dates is of no consequence.

16, 2010, subject to the requirement to install an ignition interlock. (R.R. at 24-25). Gingrich stated that she installed the ignition interlock system on her vehicle. *Id.* She testified further that she renewed her driver's license on October 25, 2013 (R.R. at 26).

Gingrich testified that she had earned an associate's degree and a bachelor's degree and that she had been married in 2012. (R.R. at 26-27). She testified that if she had known about the current suspension it might have affected her decision to get married. (R.R. at 27-28). She also testified that she has a five-year old daughter whom she drives to school, and stated that if she had known about the current suspension it would have affected the decision about which school her daughter would attend. (R.R. at 28-29).

Gingrich testified that she works as an inspector for the United States Department of Agriculture and she drives to farms in order to inspect processing plants. (R.R. at 30). She stated that if she loses her operating privilege she most likely would lose her job. (R.R. at 31).

After deferring decision "for a period of 60 days in order to give [Gingrich] the opportunity to explore an administrative resolution of the matter" (R.R. at 41), common pleas on April 24, 2015 dismissed Gingrich's appeal and reinstated the license suspension on the basis that the delay was not attributable to the Department. In its Order and the accompanying Opinion, common pleas incorporated its opinion issued in two similar matters in which it found that the delay of up to ten years by the York County Clerk of Courts in submitting reports of convictions to the Department was "truly unconscionable." (Op. at 3). Under these circumstances common pleas suggested that this Court "may choose to

3

clarify, if not modify, its prior holdings to take into consideration what we would perceive to be a patent denial of due process." *Id*.

Before this Court,[5] Gingrich urges that we find that common pleas erred by reinstating her suspension where she showed that she was prejudiced by the nearly ten-year delay in the imposition of the license suspension. She asserts that the extraordinary delay was a denial of due process. The Department does not dispute that Gingrich was prejudiced by the delay caused by the York County Clerk's failure to timely forward conviction reports (Brief at 12), but argues that Gingrich did not show that the delay was attributable to the Department as required by our previous decisions.

Reporting of convictions to the Department by the clerks of courts is required by Section 6323(1)(i) of the Code as follows:

### § 6323.  Reports by courts

Subject to any inconsistent procedures and standards relating to reports and transmission of funds prescribed pursuant to Title 42 (relating to judiciary and judicial procedure):

(1) The following shall apply:

(i) The clerk of any court of this Commonwealth, *within ten days after final judgment of conviction or acquittal or other disposition of charges* under any of the provisions of this title or under section 13 of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, including an adjudication of delinquency or the granting of a consent decree, shall send to the department

---

[5] Based on the issue raised, our scope of review is limited to determining if common pleas committed an error of law. Accordingly, our review is plenary.

4

a record of the judgment of conviction, acquittal or other disposition.

75 Pa. C.S §6323(1)(i) (emphasis added).

We recently addressed the issue of the delay in reporting convictions to the Department by the York County Clerk of Courts in *Smires v. O'Shell*, 126 A.3d 383 (Pa. Cmwlth. 2015). In that matter, a group of licensees petitioned for review seeking a writ of mandamus against the York County Clerk of Courts and the Department as a result of licensees' respective convictions not being reported to the Department for a period of five to ten years after the conviction dates. Licensees in their petition for review alleged that a 2014 audit of the York County Clerk of Court's office showed that approximately 5000 convictions were not reported to the Department as required by Section 6323, i.e., within ten days of the conviction. *Id*. at 385-386.

The licensees in *Smires* alleged further that their convictions, which occurred between 2004 and 2009, were not reported until 2014, when the Clerk of Courts submitted several thousand reports to the Department after his discovery of the unreported convictions. *Id* at 386. As a result the Department did not issue suspension notices until five to ten years after the convictions. *Id*. Upon receipt of the conviction notices, the Department suspended licensees' operating privileges pursuant to Section 1532(c) of the Code, which states:

> The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state, or any person 21 years of age or younger upon receiving a certified record of the person's conviction or adjudication of delinquency under 18

Pa.C.S. § 2706 (relating to terroristic threats) committed on any school property, including any public school grounds, during any school-sponsored activity or on any conveyance providing transportation to a school entity or school-sponsored activity.

75 Pa. C.S. §1532(c).

The licensees appealed their suspensions to common pleas naming the Department and the Clerk of Courts as parties. The Clerk was dismissed as a party. Licensees claimed that the statutory appeal left them with no redress against the Clerk. *Smires*, 126 A.3d at 386. Licensees posited that the Clerk of Court's failure to report their convictions within the required ten-day time period rendered the reports "illegal, null and void *ab initio*" and that the extreme delay in reporting violated their due process and equal protection rights. *Id.* at 386-387. They thus asserted that the Clerk of Courts should be equitably estopped from issuing untimely conviction reports and that the Department was estopped from acting on the delayed notices. Licensees also asserted that the doctrine of laches barred any action on their convictions by either the Clerk of Courts or the Department. *Id.* As relief, Licensees sought a writ of mandamus to the Clerk of Courts to issue new conviction reports that would nullify the prior reports or date the suspensions to the respective dates of conviction. Licensees also sought a writ of mandamus directing the Department to reject the prior conviction reports as untimely filed. *Id.*

The Department and the Clerk of Courts filed preliminary objections in the nature of a demurrer arguing that licensees had an adequate statutory remedy in the suspension appeal provided in Section 1550(a) of the Code,[6] and that licensees did not have a clear right to relief. *Smires*, 126 A.3d at 387.

---

[6] Section 1550(a) provides:

**(Footnote continued on next page…)**

6

As a preliminary matter, the Court reviewed the body of case law regarding delays in reporting convictions to the Department. That cogent and succinct review stated:

> In *Department of Transportation, Bureau of Driver Licensing v. Green*, . . . 546 A.2d 767 (Pa. Cmwlth. 1988), *affirmed without opinion*, . . . 569 A.2d 350 (Pa. 1990), a clerk of courts notified PennDOT 14 months after a licensee's conviction, to which PennDOT responded with a license suspension. On appeal, the licensee argued that the untimely notice violated the statute, due process and caused him extreme prejudice because he lost his employment. The trial court agreed with the licensee and sustained his appeal. This Court reversed. We explained as follows:
>
>> Under the Vehicle Code, [PennDOT] is the agency made responsible for imposition of the sanctions which the law uses to keep unsafe drivers off the highways for stated periods. This court has held that a material breach by [PennDOT] of that responsibility will invalidate the legal effectiveness of the sanction. If [PennDOT] too often failed to meet the responsibility thus focused upon it, the locus of fault would be clear and executive and legislative remedies could be directed at [PennDOT]. But a very different situation would prevail if the effectiveness of the Vehicle Code sanctions became dependent upon scores of court clerks and hundreds of functionaries within the minor judiciary. This court's rule

_____

**(continued…)**

[a]ny person who has been denied a driver's license, whose driver's license has been canceled, whose commercial driver's license designation has been removed or whose operating privilege has been recalled, suspended, revoked or disqualified by the department shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure). The appellant shall serve a copy of the petition for appeal, together with a copy of the notice of the action from which the appeal has been taken, upon the department's legal office. 75 Pa. C.S. § 1550(a).

7

therefore protects the vehicle safety laws from vulnerability to delays within a system where detection and correction of official failure would be much more difficult.

*Green*, 546 A.2d at 769.

Thereafter, in *Pokoy v. Department of Transportation, Bureau of Driver Licensing*, 714 A.2d 1162 (Pa. Cmwlth. 1998), a licensee challenged her suspension that was imposed after the clerk of courts waited four years to notify PennDOT of her DUI conviction. The licensee argued that "four years was an unreasonably long delay and that she has been prejudiced by the delay." *Id*. at 1164. We concluded that a prejudicial delay could be relevant but only where the delay was attributable to PennDOT. We set up a two-prong test:

> In order for Appellant to successfully challenge [PennDOT's] license suspension, she bears the burden of establishing: (1) that there was an unreasonable delay *that was attributable to [PennDOT]*; and (2) that the delay caused her to believe that her operating privileges would not be impaired and that she relied on this belief to her detriment.

*Id*. (*emphasis in original*). To meet the first prong

> the law is settled that, where [PennDOT] is not guilty of administrative delay, *any delay caused by the judicial system (e.g., the Clerk of Courts)* not notifying [PennDOT] in a timely manner, *will not invalidate a license suspension* that is authorized by the Code and imposed by [PennDOT]. *Fordham v. Department of Transportation, Bureau of Driver Licensing*, 663 A.2d 868 (Pa.Cmwlth.1995); [and *Green*]. In determining whether there was an unreasonable delay attributable to [PennDOT], the relevant time period is that between the point at which [PennDOT] receives notice of the driver's conviction from the judicial system and the point at which [PennDOT] notifies the driver that her license has been suspended or revoked. *Fordham*. In other words, only an unreasonable delay by [PennDOT], and not the judicial system, invalidates [PennDOT's] license suspension.

*Id*. (*emphasis added*). Because the licensee could not meet the first prong of the two-part test, this Court upheld the license suspension.

More recently, in *Fruehwirth v. Department of Transportation, Bureau of Driver Licensing*, 51 A.3d 920, (Pa. Cmwlth., 104 C.D. 2012, filed September 7, 2012), a licensee challenged his suspension for underage drinking. Licensee was charged in 2004, but the charge was not processed by the magisterial district judge's office until 2011. Believing he would be subject only to a fine, the licensee did not attend the hearing and was convicted *in absentia*. Thereafter, the licensee learned that this conviction also subjected him to a 90-day license suspension.

The trial court sustained the licensee's appeal. The trial court acknowledged that PennDOT did not cause the delay. Nevertheless, it concluded that a suspension issued seven years after the conviction authorized equitable relief. This Court reversed. Again, we confirmed that PennDOT could not be held liable for a delay it did not cause.

Also relevant is precedent that has established that the 10-day deadline for a clerk of court to notify PennDOT of a conviction is directory, not mandatory. In *Department of Transportation, Bureau of Driver Licensing v. Claypool*, 152 Pa. Commw. 332, 618 A.2d 1231 (Pa. Cmwlth. 1992), the clerk did not notify PennDOT of the licensee's DUI conviction until 23 days after the date of conviction. Because Section 6323(1)(i) states that the notice "shall" be sent to PennDOT "within ten days after final judgment of conviction[,]" 75 Pa. C.S. §6323(1)(i), the licensee argued that the clerk's failure to comply with the statute rendered PennDOT's suspension invalid. We disagreed.

We explained distinction between the mandatory and directory use of the word "shall" as follows:

> To hold that a provision is directory rather than mandatory, does not mean that it is optional—to be ignored at will. Both mandatory and directory provisions of the legislature are meant to be followed. It is only in the *effect* of non-compliance that a distinction arises. A provision is mandatory when failure to follow it renders the proceedings to which it relates illegal and void; it is

9

> directory when the failure to follow it does not invalidate the proceedings.

*Claypool*, 618 A.2d at 1232-33 (quoting *Pleasant Hills Borough v. Carroll*, 182 Pa. Super. 102, 125 A.2d, 466, 469, 48 Mun. L Rep. 182 (Pa. Super. 1956) (emphasis in original)). A license suspension for DUI convictions promotes health and safety. We concluded that this important sanction could not turn on the actions of "court clerks throughout the Commonwealth." *Id*. at 1233. *Citing Green*, 546 A.2d at 769, we explained, further, that PennDOT has no ability to supervise court clerks. Accordingly, we sustained the license suspension notwithstanding the clerk's delay in reporting the licensee's conviction.

*Smires*, 126 A.3d 388-90.

On review of licensees' claims and the preliminary objections, the *Smires'* court concluded that licensees did not demonstrate a clear legal right to relief, a prerequisite to mandamus. The Court did not decide the merits of licensees' legal claims because it concluded that they should be resolved in their respective statutory appeals.

> Licensees may challenge their suspensions for any reason, including the Clerk's delay in reporting them to PennDOT. Unfortunately for Licensees, the precedent has established that PennDOT cannot be faulted for delays not within its control. Simply because the case law is not in Licensees' favor does not mean they are entitled to more than their statutory appeal. It does mean they do not have a clear right to relief. Mandamus does not lie where the petitioner has another appropriate and adequate remedy, which Licensees have in the statutory appeal. This is the appropriate vehicle by which Licensees can raise all of their constitutional and statutory claims. Licensees' statutory appeal includes appellate review. In sum, the statutory appeal is the vehicle by which they can challenge their license suspensions.

*Id*. (footnote deleted).

It thus is well established that only delays attributable to the Department may constitute cause to invalidate a suspension imposed pursuant to 75 Pa. C.S. § 1532(c). It is equally well established that the remedy for one aggrieved by a suspension of her operating privilege is an appeal to common pleas as provided at 75 Pa. C.S. § 1550(a).

Turning to the instant matter, Gingrich availed herself of her statutory remedy. While she was able to show prejudice due to the nearly ten-year delay between her conviction and the Department's notice of suspension, the body of case law outlined in *Smires* controlled the outcome where the delay was attributable to the York County Clerk of Courts and not to the Department. On appeal here, Gingrich raises due process and fairness issues similar to those we did not reach in *Smires* because of the procedural vehicle in which they came before us.

As noted above, the requirement that the delay be attributable to the Department before it may be actionable lies in the differing responsibilities of the judicial and executive branches and serves an important public safety purpose, and we emphasize that this remains the general rule. That said, however, we have concluded that there may be limited extraordinary circumstances where the suspension loses its public protection rationale and simply becomes an additional punitive measure resulting from the conviction, but imposed long after the fact. Where a conviction is not reported for an extraordinarily extended period of time, the licensee has a lack of further violations for a significant number of years before the report is finally sent, and is able to demonstrate prejudice, it may be appropriate for common pleas to grant relief.

11

Here, the record shows that Gingrich's 2004 conviction was not reported for nearly ten years. While we will not establish a bright line in which a delay becomes extraordinary, we conclude that the delay here meets that standard. The record further shows that Gingrich's license was suspended due to her 2006 conviction and subsequently reinstated in 2010, that she installed an ignition interlock on her vehicle, and that she renewed her license in 2013. Since her last brush with the law, Gingrich has earned an associate's and a bachelor's degree, married, and obtained employment as an inspector with the United States Department of Agriculture that requires her to drive to various farms to perform her inspections. She also has a five-year-old daughter whom she drives to school. She testified credibly that the additional suspension here at issue, had she known about it over the period since her license was reinstated, would have impacted her decisions regarding marriage and where her daughter attends school, and that if the suspension is not vacated, she likely will lose her job. As we noted earlier, the Department does not dispute that Gingrich met her burden to show prejudice.

Based on the record before common pleas, we conclude that the extraordinary delay in reporting Gingrich's 2004 conviction that resulted in a gap of ten years between her conviction and 2014 suspension, combined with her lack of additional issues since her last conviction in 2006 and her showing of prejudice, has created a circumstance where the 2004 suspension has lost the underlying public safety purpose and now simply is a punitive measure sought to be imposed too long after the fact. We reiterate that the general rule remains that only delays attributable to the Department may be vacated. However, where, as here, a licensee is able to demonstrate all of the following: a conviction that is not reported for an

extraordinarily extended period of time[7]; the licensee has a lack of further issues for an extended period; and prejudice, it may be appropriate for common pleas to grant relief. As we find that the record demonstrates the limited extraordinary circumstances outlined above, we will grant the requested relief.

 

**BONNIE BRIGANCE LEADBETTER,**
Judge

Judge Leavitt concurs in result only.

---

[7] We will not impose a bright line as to what constitutes an extraordinarily extended period of time, but the nearly ten-year delay in this matter meets the test.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jaclyn Gingrich, : 
               Appellant : 
                : 
           v. : No. 748 C.D. 2015
                : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

# O R D E R

AND NOW, this 30th day of March, 2016, the April 24, 2015 Order of the Court of Common Pleas of Cumberland County is REVERSED, and the Department of Transportation is ORDERED to vacate Appellant's suspension.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge