# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jack Lee Janes, Jr.  :
                     :
        v.           :  No. 369 C.D. 2017
                     :  Submitted:  September 8, 2017
Commonwealth of Pennsylvania,      :
Department of Transportation,      :
Bureau of Driver Licensing,        :
              Appellant            :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  October 24, 2017**


The Commonwealth of Pennsylvania, Department of Transportation, Bureau

of Driver Licensing (PennDOT) appeals an Order of the Court of Common Pleas of

Delaware County (trial court) that sustained the statutory appeal of Jack Lee Janes,

Jr., (Licensee) from a one-year suspension of his operating privilege imposed by

PennDOT pursuant to Section 13(a)(16) of The Controlled Substance, Drug, Device

and Cosmetic Act (Drug Act), 35 P.S. § 780-113(a)(16).[1]  Because Licensee does

---

[1] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780-113(a)(16).  This offense is
defined to include:

> Knowingly or intentionally possessing a controlled or counterfeit substance by a
> person not registered under this act, or a practitioner not registered or licensed by

not meet the extraordinary circumstances exception set forth in *Gingrich v. Department of Transportation, Bureau of Driver Licensing*, 134 A.3d 528 (Pa. Cmwlth. 2016), we reverse.

The facts are straightforward and not in dispute. On December 14, 2012, Licensee violated Section 13(a)(16) of the Drug Act, relating to possession of a controlled substance. This violation and the resulting suspension are at issue in this case. At the time of this violation, Licensee's license was suspended for a prior violation of Section 13(a)(31) of the Drug Act, 35 P.S. § 780-113(a)(31), relating to possession of marijuana (Prior Violation). On July 31, 2014, Licensee was convicted of the violation at issue by the trial court. Approximately two years later, on August 9, 2016, the Delaware County Office of Judicial Support (OJS) notified PennDOT of Licensee's July 31, 2014 conviction. PennDOT mailed a Notice of Suspension, pursuant to Section 1532(c) of the Vehicle Code (Code), 75 Pa. C.S. § 1532(c),[2] to Licensee on August 24, 2016. The Notice of Suspension stated that

---

the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

*Id.*

[2] Section 1532(c) of the Code provides:

Suspension.--The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state, or any person 21 years of age or younger upon receiving a certified record of the person's conviction or adjudication of delinquency under 18 Pa.C.S. § 2706 (relating to terroristic threats) committed on any school property, including any public school grounds, during any school-sponsored activity or on any conveyance providing transportation to a school entity or school-sponsored activity.

2

Licensee's operating privilege would be suspended for a period of one year effective on September 28, 2016. Licensee timely filed a License Suspension Appeal in the trial court on September 15, 2016.

On March 7, 2017, the trial court held a *de novo* hearing on Licensee's appeal, at which PennDOT presented Licensee's Certified Driving Record, which showed that, on April 5, 2013, after the violation at issue, Licensee had violated Section 13(a)(30) of the Drug Act, 35 P.S. § 780-113(a)(30)[3] (Subsequent Violation). Licensee was convicted of the Subsequent Violation by the trial court on December 9, 2013. As a result of the Subsequent Violation, Licensee's license was suspended from January 28, 2014, to January 28, 2015, when Licensee's operating privilege was restored.

Additionally, at the hearing, Licensee did not dispute the July 31, 2014 conviction for the violation at issue but testified that he had reformed in the two-year period since the conviction. Upon having his operating privilege restored from the suspension imposed because of the Subsequent Violation, Licensee "took classes at Delaware County Community College" to obtain "his ASE certification[4] and a vehicle inspection license through PennDOT." (Trial Ct. Op. at 2.) Licensee is

---

75 Pa. C.S. § 1532(c).

[3] This offense is defined to include:

> Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

[4] ASE is short for the National Institute for Automotive Service Excellence, which provides independent testing and certification for automotive professionals. (Licensee's Br. at 4.)

3

currently employed at his father's automotive repair facility where his job includes "running the shop" and inspecting vehicles. (R.R. at 17a.) Licensee testified that if he were to lose his driver's license, he would lose his current job and would have difficulty in finding another job that pays him a similar rate. Licensee further indicated that if his license were to be suspended, "he would likely lose his newly purchased vehicle and his home" because of a lack of income. (Trial Ct. Op. at 2.)

"On March 7, 2017, the [t]rial [c]ourt sustained the Appeal and reinstated [Licensee's] operating privilege." (*Id.* at 3.) The trial court reasoned that although the traditional rule is that delays attributable to non-PennDOT entities are insufficient to invalidate a license suspension, a limited exception to this rule was set forth in *Gingrich* that allows a trial court to consider delays attributable to non-PennDOT entities in certain circumstances. (*Id.* at 4–5.) In its opinion, the trial court found that the circumstances of this case were analogous to the facts in *Gingrich*. (*Id.* at 6.) PennDOT contended that *Gingrich* was inapplicable because the delay at issue in this case is substantially less than the delay in *Gingrich*. The trial court rejected this argument by distinguishing the precedent relied upon by PennDOT and finding guidance in Section 6323(1)(i) of the Code, 75 Pa. C.S. § 6323(1)(i),[5] which directs OJS to report convictions to PennDOT "within ten days

---

[5] Section 6323(1)(i) of the Code provides:

> The clerk of any court of this Commonwealth, within ten days after final judgment of conviction or acquittal or other disposition of charges under any of the provisions of this title or under section 13 of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, including an adjudication of delinquency or the granting of a consent decree, shall send to the department a record of the judgment of conviction, acquittal or other disposition.

75 Pa. C.S. § 6323(1)(i).

4

after final judgment of conviction." (*Id.* at 9.) The trial court further concluded that the suspension had lost its public protection rationale and is instead being instituted as an additional punitive measure. (*Id.* at 10.) PennDOT timely appeals.[6]

On appeal, PennDOT argues that the trial court erred in sustaining Licensee's appeal and ordering the reinstatement of Licensee's operating privilege. PennDOT asserts that the trial court erred because, under the traditional rule, a license suspension generally may only be invalidated on the basis of delay when PennDOT itself is responsible for an unreasonable delay, and a licensee would suffer prejudice as a result of having his or her operating privilege suspended. Further, PennDOT argues that to the extent that *Gingrich* created an exception to this traditional rule, *Gingrich* does not apply to these circumstances. Specifically, PennDOT asserts that *Gingrich* is inapplicable because the two-year delay here does not amount to an "extraordinarily extended period of time" and because Licensee did not demonstrate a lack of further violations for a significant number of years.

Generally, for a licensee to challenge a license suspension on the basis of delay, the licensee must prove that: "'(1) an unreasonable delay chargeable to PennDOT led the licensee to believe that [his] operating privileges would not be impaired; and (2) prejudice would result by having the operating privileges suspended after such delay.'" *Dep't of Transp., Bureau of Driver Licensing v. Gombocz*, 909 A.2d 798, 800–01 (Pa. 2006) (alteration in original) (quoting *Terraciano v. Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 236 (Pa. 2000)). Historically, this Court has only considered the delay that is attributable to

---

[6] Our review is limited to determining whether the trial court's findings were supported by substantial evidence, whether errors of law were committed, or whether the trial court's determination constituted an abuse of discretion. *See Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 n.3 (Pa. Cmwlth. 2008).

5

PennDOT in determining whether a suspension may be invalidated on the basis of delay. *See, e.g.*, *Dep't of Transp., Bureau of Driver Licensing v. Green*, 546 A.2d 767, 769 (Pa. Cmwlth. 1988). In *Green*, we explained the rationale for the traditional rule:

> If [PennDOT] too often failed to meet the responsibility thus focused upon it, the locus of fault would be clear and executive and legislative remedies could be directed at [PennDOT]. But a very different situation would prevail if the effectiveness of the Vehicle Code sanctions became dependent on scores of court clerks and hundreds of functionaries within the minor judiciary.

*Id.* However, recently, this Court recognized "limited extraordinary circumstances" where a licensee may rely on the delay attributable to entities other than PennDOT by showing that: (1) the "conviction is not reported for an extraordinarily extended period of time"; (2) "the licensee has a lack of further violations for a significant number of years before the report is finally sent"; and (3) the licensee is prejudiced by the delay. *Gingrich*, 134 A.3d at 534.

PennDOT seeks the application of the traditional, non-*Gingrich* rule here. In the present case, there is no dispute that PennDOT acted promptly once it received Licensee's notice of conviction from the OJS.[7] Thus, even though the trial court found prejudice under the traditional rule, Licensee would not be entitled to relief because PennDOT was not responsible for the delay. Therefore, in order to obtain the desired relief, Licensee must demonstrate that he meets the three factors of the *Gingrich* standard.

---

[7] PennDOT acted within fifteen days of receiving the appropriate documentation from the OJS.

6

No dispute exists as to whether the third factor of the *Gingrich* standard – prejudice – is met in this case. The trial court found that, based on Licensee's credited testimony, Licensee would be prejudiced by the delay because without his license, he runs the risk of losing his job and source of income to pay for his home and car. (Trial Ct. Op. at 2, 7.) PennDOT does not challenge this finding of prejudice, and prior case law supports the notion that losing a job that requires a driver's license constitutes prejudice. *See Orloff v. Dep't of Transp., Bureau of Driver Licensing*, 912 A.2d 918, 924 (Pa. Cmwlth. 2006). For these reasons, the evidence in the record supports the finding that Licensee would be prejudiced by the delay in suspending his license. Although Licensee is able to demonstrate prejudice resulting from the license suspension delay, the Court must evaluate this prejudice along with the other two *Gingrich* factors to determine whether Licensee meets the burden of the limited extraordinary circumstances exception explained in *Gingrich*.

The first factor in *Gingrich* requires us to consider whether the delay from the time of Licensee's conviction to the time that OJS sent the report to PennDOT was an "extraordinarily extended period of time." *Gingrich*, 134 A.3d at 534. In *Gingrich*, the Court did not establish a bright line test for meeting this factor, but instead left it for the trial courts to determine on a case-by-case basis. *Id.* at 535 n.7. Since *Gingrich*, we have affirmed trial court determinations where a delay attributable to non-PennDOT entities, ranging from 7 years and 10 months to 10 years, was found to constitute an "extraordinarily extended period of time." *See Eckenrode v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 168 C.D. 2015, filed July 14, 2016), slip op. at 6 (9 years);[8] *Capizzi v. Dep't of Transp.,*

---

[8] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion filed after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

7

*Bureau of Driver Licensing*, 141 A.3d 635, 643 (Pa. Cmwlth. 2016) (7 years, 10 months); *Orwig v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 286 C.D. 2015, filed June 3, 2016), slip op. at 5–6 (10 years); *Gingrich*, 134 A.3d at 535 (10 years). The Court has also previously held that a trial court erred because a delay of roughly five months, "which, while not ideal, was certainly not an 'extraordinarily extended period of time.'" *Nercesian v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1795 C.D. 2016, filed June 12, 2017), slip op. at 9. Recently, this Court upheld a trial court decision that found two years and seven months was an extraordinarily extended period of time when considered with the other two *Gingrich* factors. *Gifford v. Dep't of Transp., Bureau of Driver Licensing*, __ A.3d __, __ (Pa. Cmwlth., No. 386 C.D. 2017, filed October 24, 2017), slip op. at 10-11. The delay in this case of approximately two years falls in between time frames that, post-*Gingrich*, have been determined not to be an "extraordinarily extended period of time" and those that were.[9]

The delay between Licensee's conviction and when OJS sent the report to PennDOT in this case was technically two years; however, during nearly six months of the two years, Licensee's license was suspended for the Subsequent Violation. Therefore, the delay during which Licensee could have been prejudiced by the delay in suspending his license was approximately one year and six months. We consider whether the trial court erred in finding this delay constitutes an "extraordinarily extended period of time," *Gingrich*, 134 A.3d at 534, and whether the *Gingrich* test is met when this delay is considered with the other *Gingrich* factors.

---

[9] While, in dicta, we have questioned whether a three-year delay caused by a non-PennDOT entity would constitute an "extraordinarily extended period of time," we did not further address this issue because the licensee was found to have not been prejudiced by the delay. *Currie v. Dep't of Transp., Bureau of Driver Licensing*, 142 A.3d 186, 189 n.4 (Pa. Cmwlth. 2016).

8

The second *Gingrich* factor examines whether Licensee has failed to incur "further violations for a significant number of years before the report is finally sent" for the suspension at issue. *Gingrich*, 134 A.3d at 534. The trial court incorrectly stated in its analysis that Licensee had "not had any further violations in the interim." (Trial Ct. Op. at 10.) Licensee's Certified Driving Record indicates that he committed the Subsequent Violation on April 5, 2013, which is only about 4 months after the violation at issue, and about 21 months before Licensee's report was sent by OJS to PennDOT on August 9, 2016.

In *Gingrich*, although there was another violation, there were no further violations for approximately eight years before the report was sent to PennDOT, which weighed in the licensee's favor.[10] *Gingrich*, 134 A.3d at 535. Similarly, in *Capizzi*, the licensee had a "clean record for an extended period" when the licensee had committed a subsequent violation nearly eight years before the report was finally sent to PennDOT. *Capizzi*, 141 A.3d at 643.

The rationale for creating the three factors in *Gingrich* was to ensure that public protection remained the underlying foundation for the suspension, even after a delay. Here, the protection of the public is still a viable concern because the Subsequent Violation occurred within a short period of time after the violation at issue. Additionally, Licensee's license was suspended from the Prior Violation at the time that the violation at issue here occurred. The multiple violations here weigh against Licensee with regard to the protection of the public.

Recently, we expounded on how the *Gingrich* factors are to be balanced with one another:

---

[10] In *Gingrich*, the violation and conviction at issue took place in 2004, and the report for that conviction was not sent until 2014. *Gingrich*, 134 A.3d at 529. The licensee in that case was subsequently convicted in 2006, resulting in the suspension of licensee's license. *Id.* at 535.

9

We examine *Gingrich* and the cases that followed for guidance on the application of *Gingrich*'s three factors. In *Gingrich*, the delay at issue was nearly ten years, and there was significant prejudice because, during that time period, the licensee married, obtained higher education degrees, got a new job that required her to drive, and had a child who attended a school that required the licensee to drive. *Gingrich*, 134 A.3d at 535. Because of the prejudice involved and the long delay, the Court gave less weight to the licensee's subsequent driving violation and suspension and concluded that the license suspension should be reversed. *Id.* The three *Gingrich* factors were also balanced in *Capizzi*, where the delay was long (7 years and 10 months), no further violations were committed by the licensee, and at least some prejudice was shown by the licensee in that he could possibly lose his current job as a valet that required his license. *Capizzi*, 141 A.3d at 643. Although the Court in *Capizzi* found that the prejudice involved and the length of the delay were not as significant as in *Gingrich*, given the absence of additional violations combined with what delay and prejudice there was, we held that the trial court could find that the *Gingrich* exception was met. *Id.*

The *Gingrich* factors were also recently balanced in *Currie v. Department of Transportation, Bureau of Driver Licensing*, 142 A.3d 186, 187 (Pa. Cmwlth. 2016), where the delay caused by a non-PennDOT entity was nearly three years. However, in *Currie*, the licensee was unable to demonstrate any prejudice because for all but three months of the three-year delay, licensee's license was suspended due to a different violation; therefore, we held that the *Gingrich* exception was not met. *Id.* at 189-90.

*Gifford*, __ A.3d at __, slip op. at 9-10. The licensee in *Gifford* was able to demonstrate significant prejudice because of familial obligations that required him to drive his ill daughter to the hospital frequently and a recently acquired job that required a driver's license. Further, the licensee in *Gifford* offered testimony that he actively sought other jobs and was denied these jobs because of his felony conviction, leading him and the court to believe that the imposition of a suspension would drastically impair his ability to find another job.

10

Here, the prejudice shown by Licensee is not nearly as significant as the licensees in *Gingrich* and *Gifford*. For example, Licensee did not demonstrate any prejudice resulting from familial obligations like the licensees in both *Gingrich* and *Gifford*. Moreover, Licensee's inability to locate a job seems to be more speculative, as Licensee stated that he has "a record, so it's going to be hard for me to find another job, let alone the amount of money I make now," (R.R. at 21a), which is unlike the licensee in *Gifford* who was able to show that the loss of a license would definitively impair his ability to find another job by actively seeking alternate employment. *Gifford*, __ A.3d at __, slip op. at 3-4, 7. Licensee's situation is also somewhat analogous to the licensee in *Currie*, who was unable to demonstrate significant prejudice because his license was suspended for all but three months of the three-year delay at issue. Here, Licensee's license was suspended, due to the Subsequent Violation, for all but eighteen months of the delay caused by OJS. Additionally, the delay in this case of two years is shorter than all of the delays described in *Gingrich*, *Gifford*, *Capizzi*, and *Currie*.[11] When this is all considered **with the additional consideration that Licensee committed a subsequent violation in short proximity to the violation at issue and to the time that the report was sent by OJS,** Licensee does not meet the limited extraordinary circumstances exception explained in *Gingrich.*

For the foregoing reasons, the trial court abused its discretion when, based on the credited evidence presented in this matter, it held that Licensee was able to satisfy the *Gingrich* exception. Because the record below demonstrates that the limited

---

[11] We note that the delay at issue here is much shorter to aid in balancing the *Gingrich* factors and do not attempt to derive a bright line rule for what constitutes an "extraordinarily extended period of time." *Gingrich*, 134 A.3d at 534.

11

extraordinary circumstances exception set forth in *Gingrich* does not apply to the case at issue, we will reverse the trial court's March 7, 2017 Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jack Lee Janes, Jr.             :
                             :
            v.                :    No. 369 C.D. 2017
                             :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
            Appellant    :

## O R D E R

NOW, October 24, 2017, the March 7, 2017 Order of the Court of Common Pleas of Delaware County is **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** Judge