IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aaron Naginey                                    :
                                                 :   No.  806 C.D. 2017
                    v.                           :
                                                 :   Submitted:  November 9, 2018
Commonwealth of Pennsylvania,                    :
Department of Transportation,                    :
Bureau of Driver Licensing,                      :
                    Appellant                    :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge[1]


OPINION BY
JUDGE McCULLOUGH                                  FILED:  January 3, 2019


           The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the May 11, 2017 order of the Court of Common Pleas of the Seventeenth Judicial District, Union County Branch (trial court), which sustained the appeal of Aaron Naginey (Licensee) and rescinded the one-year suspension of his operating privilege imposed by DOT in accordance with section 3804(e)(2)(i) of the Vehicle Code (Code), 75 Pa.C.S. §3804(e)(2)(i),[2] as a consequence of Licensee's conviction for driving under the influence (DUI) in Florida.

---

[1] This case was decided before Judge Colins' service on the Court ended on December 31, 2018.

[2] Section 3804(e) of the Code provides for a 12-month suspension of the operating privilege of an individual upon conviction for an ungraded misdemeanor or misdemeanor of the second degree under section 3802 (relating to driving under the influence of alcohol or a controlled substance) or an offense which is substantially similar to an offense enumerated in section 3802 reported to DOT under the Driver's License Compact, 75 Pa.C.S. §§1581-1586.

## Facts and Procedural History

The underlying facts of this case are not in dispute. On August 9, 2011, Licensee committed a DUI violation in Florida. On January 28, 2012, Licensee committed a DUI violation in Pennsylvania. Licensee was convicted of his Pennsylvania DUI violation on November 19, 2012. He was convicted of his Florida DUI violation on March 12, 2013. However, Florida did not mail notification of the Florida DUI conviction to DOT until April 22, 2016, more than three years after his conviction in that state. DOT processed the notice from Florida on June 23, 2016. One week later, by notice dated June 30, 2016, DOT advised Licensee that his operating privilege would be suspended for a period of one year as a result of his Florida DUI conviction.

Licensee filed a timely appeal with the trial court, which conducted a *de novo* hearing on May 11, 2017. At this hearing, DOT introduced, and the trial court admitted, a certified packet of documents evidencing his Pennsylvania and Florida DUI convictions, the notice received from authorities in Florida, the notice received from the clerk of courts regarding his Pennsylvania DUI conviction, DOT's June 30, 2016 notice of suspension, and Licensee's driving record. (Reproduced Record (R.R.) at 17a-21a, 41a-42a.)

Licensee testified on his own behalf. Licensee indicated that he has worked as a speech language pathologist for a local school district and a healthcare company since 2007 and 2011, respectively. He explained that his work for the healthcare company, which he began in 2011 when he and his wife were expecting a baby and she could no longer work, involved providing home healthcare and traveling to the individuals' homes. However, he identified a notice that he received from DOT dated September 8, 2011, effectively cancelling his license as of October 13, 2011, based on information received from the state of Florida reflecting that his

2

operating privilege was suspended. He also identified a restoration requirements letter that he received from DOT dated September 23, 2013, explaining the procedure for restoring his operating privilege, including providing DOT with a clearance letter from Florida. He obtained the necessary clearance letter that same day, as evidenced by Licensee Exhibit 3. This letter provided that Licensee's operating privilege was not revoked, suspended, or cancelled in Florida. Finally, Licensee identified a notice that he received from DOT effectively restoring his operating privilege as of September 23, 2013. (R.R. at 58a-62a, 121a-127a.)

Licensee testified that his operating privilege was suspended/cancelled by DOT for a period of approximately two years from October 2011 through September 2013 as a result of information DOT received from Florida. Licensee indicated his belief that his operating privilege was suspended in Florida as a result of a DUI charge he incurred on August 8 or 9, 2011. Licensee noted that his second job essentially ceased due to the loss of his operating privilege. Upon restoration of his operating privilege in September 2013, Licensee began building a client base in his second job. If he were to lose his operating privilege again, Licensee testified that he would not be able to continue with this home healthcare job, which itself generated $29,000.00 in income in 2016. (R.R. at 63a-72a.)

On cross-examination, Licensee acknowledged his Florida DUI and his Florida conviction on March 12, 2013, which included a six-month suspension of his operating privilege. Upon expiration of this six-month suspension in September 2013, Licensee stated that he sought and obtained a clearance letter from the authorities in Florida. (R.R. at 74a-77a.)

At the conclusion of the hearing, the trial court sustained Licensee's appeal and rescinded DOT's one-year suspension of his operating privilege, concluding that the delay of approximately 37 months between Licensee's Florida

3

DUI conviction and the notice to Pennsylvania was extraordinary, unreasonable, and prejudicial to Licensee. The trial court relied on this Court's previous decision in *Gingrich v. Department of Transportation, Bureau of Driver Licensing*, 134 A.3d 528 (Pa. Cmwlth. 2016), in reaching its decision. While Licensee had a DUI violation in Pennsylvania shortly after his Florida DUI, the trial court noted that Licensee's blood alcohol content was less than .10% in both DUIs, thereby qualifying as the lowest tier DUI offense in Pennsylvania, and that the licensee in *Gingrich* had two DUIs within the interim period between her conviction and suspension, one of which, unlike this case, involved a chemical test refusal. (R.R. at 97a-100a.) The trial court issued an order that same day reflecting its ruling. (R.R. at 128a.)

DOT thereafter filed a notice of appeal with the trial court. By order dated July 11, 2017, the trial court directed DOT to file a concise statement of errors complained of on appeal in accordance with Pa.R.A.P. 1925(b). DOT complied and alleged in this statement that the trial court erred as a matter of law in sustaining Licensee's appeal and rescinding the one-year suspension because the delay in issuing this suspension was not attributable to DOT but to another entity, *i.e.*, authorities in Florida. DOT noted that the suspension letter was issued within one week of it receiving notice from Florida of Licensee's DUI conviction in that state. DOT also argued that *Gingrich* was inapplicable here in light of Licensee's intervening DUI in this Commonwealth on November 19, 2012. (R.R. at 137a-41a.) In lieu of filing an opinion in accordance with Pa.R.A.P. 1925(a), the trial court issued an order dated August 3, 2017, referring the Superior Court to the transcript of the May 11, 2017 hearing for its reasons underlying its decision.[3] (R.R. at 144a.)

---

[3] The trial court mistakenly referred to the Superior Court in this order. DOT's appeal was properly filed in this Court.

4

## Discussion

On appeal,[4] DOT reiterates its argument that the trial court erred as a matter of law in sustaining Licensee's appeal on the basis of an unreasonable delay in imposing his suspension for the Florida DUI. We disagree.

Historically, to challenge a license suspension based on unreasonable delay, a licensee bore the burden of establishing: "(1) that there was an unreasonable delay *that was attributable to DOT;* and (2) that the delay caused her to believe that her operating privileges would not be impaired and that she relied on this belief to her detriment." *Pokoy v. Department of Transportation, Bureau of Driver Licensing*, 714 A.2d 1162, 1164 (Pa. Cmwlth. 1998) (emphasis in original). As to the unreasonable delay prong, this Court explained:

> Regarding the first element of this two-step analysis, the law is settled that, where DOT is not guilty of administrative delay, any delay caused by the judicial system (e.g., the Clerk of Courts) not notifying DOT in a timely manner, will *not* invalidate a license suspension that is authorized by the Code and imposed by DOT. In determining whether there was an unreasonable delay attributable to DOT, the relevant time period is that between the point at which DOT receives notice of the driver's conviction from the judicial system and the point at which DOT notifies the driver that her license has been suspended or revoked. In other words, only an unreasonable delay by DOT, and not the judicial system, invalidates [DOT's] license suspension.

*Id.* (emphasis in original) (internal citations omitted). Otherwise stated, the general rule was that only a DOT delay, not one caused by the judicial system, would suffice

---

[4] Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Piasecki v. Department of Transportation, Bureau of Driver Licensing*, 6 A.3d 1067, 1070 (Pa. Cmwlth. 2010).

to invalidate a license suspension. Therefore, if DOT timely suspended the license after receiving notice from the courts of a qualifying conviction, the suspension would stand.

However, this Court in *Gingrich* recognized a narrow exception to the general rule for what we called "limited extraordinary circumstances." 134 A.3d at 534. In *Gingrich*, the York County Clerk of Courts did not notify DOT of a licensee's 2004 DUI conviction until October 10, 2014. DOT then notified the licensee of the one-year license suspension within 14 days of receiving notification of the triggering conviction. The licensee appealed, arguing the 10-year delay between her conviction and the attendant license suspension violated her right to due process. A court of common pleas found the delay was unreasonable, but affirmed the suspension based on the above-referenced general rule because DOT was not responsible for the delay. This Court ultimately reversed the order of the court of common pleas and remanded the matter to that court to vacate the suspension.

We explained,

> the requirement that the delay be attributable to [DOT] before it may be actionable lies in the differing responsibilities of the judicial and executive branches and serves an important public safety purpose, and we emphasize that this remains the general rule. That said, however, we have concluded that there may be limited extraordinary circumstances where the suspension loses its public protection rationale and simply becomes an additional punitive measure resulting from the conviction, but imposed long after the fact. Where a conviction is not reported for an extraordinarily extended period of time, the licensee has a lack of further violations for a significant number of years before the report is finally sent, and is able to demonstrate prejudice, it may be appropriate for common pleas to grant relief.

6

*Id.* Nevertheless, we declined to create a bright-line rule for determining when a delay becomes extraordinary, simply noting that the 10-year delay in that case met the extraordinary standard.[5] *Id.* at 534-35.

Recently, this Court revisited and clarified the first *Gingrich* factor in *Middaugh v. Department of Transportation, Bureau of Driver Licensing*, __ A.3d ___ (Pa. Cmwlth., No. 815 C.D. 2017, filed October 31, 2018). In *Middaugh*, the Delaware County Office of Judicial Support (OJS), which performs the duties of the clerk of court in Delaware County, failed to notify the Department of a licensee's DUI conviction until two years and four months after the conviction. Fifteen days after receiving notification from OJS, the Department notified the licensee that his operating privilege would be suspended for a year per statute. The licensee appealed and, at a hearing before a court of common pleas, testified that he would be prejudiced by the imposition of the suspension years after his conviction because of numerous changes to his life circumstances since his conviction, specifically: he was no longer married and was no longer working due to a worsening neurological condition for which he had gone on total disability after his DUI conviction. The licensee further testified that he needed to drive himself to medical appointments that were not within either walking or biking distance from his home; he had no family who could help him with rides; due to his fixed income, he could not afford to take

---

[5] We applied *Gingrich* in *Gifford v. Department of Transportation, Bureau of Driver Licensing*, 172 A.3d 727 (Pa. Cmwlth. 2017), *appeal granted*, 184 A.3d 548 (Pa. 2018). In *Gifford*, the Delaware County Office of Judicial Support delayed in informing DOT of the licensee's conviction for fleeing and eluding, which resulted in a one-year suspension of the licensee's operating privilege, for a period of two years and seven months. During that time period, the licensee had become a delivery driver for a tire business and had no further violations or convictions. We reiterated the lack of a bright-line rule for determining whether a delay is extraordinary and noted that common pleas courts must analyze this issue on a case-by-case basis. Ultimately, given the facts of that case, we concluded that a court of common pleas did not err in applying the *Gingrich* exception and sustaining the licensee's appeal.

7

taxis or Uber; and his health insurance would not cover transportation costs. Applying the *Gingrich* factors, the court of common pleas found that the two-year, four-month delay in imposing the license suspension was unreasonable, that the licensee had no further violations for a significant number of years, and that the licensee would be prejudiced by the loss of his license. Accordingly, the court of common pleas sustained the licensee's appeal and ordered the reinstatement of the licensee's operating privilege. The Department appealed.

This Court affirmed the decision of the court of common pleas on appeal. We closely examined the statutory framework of, and this Court's case law regarding, license suspensions in relation to the first *Gingrich* factor, *i.e.*, extraordinary delay. The Court then refined the first *Gingrich* factor by examining further objective criteria that common pleas courts should consider to determine whether a non-Departmental license suspension imposition delay qualifies as extraordinary: (1) the 10-day common pleas court-to-Department reporting requirement established by Section 6323(1)(i) of the Vehicle Code,[6] and (2) the

---

[6] Section 6323(1)(i) requires trial courts to report license suspension-qualifying convictions to the Department within 10 days as follows:

> Subject to any inconsistent procedures and standards relating to reports and transmission of funds prescribed pursuant to Title 42 (relating to judiciary and judicial procedure):
>
> (1) The following shall apply:
>
>> (i) The clerk of any court of this Commonwealth, within ten days after final judgment of conviction or acquittal or other disposition of charges under any of the provisions of this title or under section 13 of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, including an adjudication of delinquency or the granting of a consent decree, shall send to the department a

**(Footnote continued on next page…)**

8

length of the underlying statutory suspension pursuant to 75 Pa.C.S. §3804(e). After examining these further objective criteria, we concluded:

> [I]f a clerk of court reports a conviction to the Department within the applicable period of the license suspension plus 10 days, such delay, as a matter of law, cannot be an extraordinarily extended period of time sufficient to meet the first *Gingrich* factor. However, where the delay exceeds that period, and where the remaining *Gingrich* factors are satisfied, a court of common pleas can find that relief is appropriate under *Gingrich*.

*Middaugh*, ___ A.3d at ___, slip op. at 23 (footnote omitted). This Court then found that the court of common pleas did not err in concluding that the two-year, four-month delay in *Middaugh* was an extraordinary delay based on the objective measurement provided by the Court's pronouncement.

Here, DOT sought to impose a one-year suspension of Licensee's operating privilege following a 37-month delay by the Florida authorities in reporting Licensee's conviction. This 37-month delay clearly exceeds the applicable period of Licensee's license suspension (one year) plus 10 days, and the record provides no explanation for the delay. Therefore, provided the other *Gingrich* factors were met, the trial court could grant relief in accordance with *Middaugh*.[7] With respect to these

---

**(continued…)**

> record of the judgment of conviction, acquittal or other disposition.

75 Pa.C.S. §6323(1)(i).

[7] While DOT suggests that this Court declare that the *Gingrich* exception only applies to delays in excess of 10 years, given that the General Assembly set forth a 10-year "lookback" period in section 3806 of the Code, 75 Pa.C.S. §3806 (relating to the imposition of harsher penalties for multiple DUI offenses), we reject that suggestion in light of our recent opinion in *Middaugh*.

9

other factors, the record reflects that Licensee had a second DUI conviction in this Commonwealth on November 19, 2012 (resulting from an arrest on January 28, 2012), which would seemingly preclude satisfaction of the second *Gingrich* factor. However, this second factor simply discusses a lack of further violations for a significant number of years before the report is finally sent, which in this case did not occur until April 22, 2016. Hence, with the exception of a speeding ticket in December 2014, Licensee remained free of violations for a period of approximately 51 months.

However, as the trial court noted, the licensee in *Gingrich* also had two DUI convictions, one in 2004 and another in 2006, but otherwise maintained a clean driving record during the roughly 96-month delay between her second DUI conviction and the reporting of her 2004 conviction to DOT. Similar to our conclusion in *Gingrich* that a clean driving record for a period of 96 months was sufficient to meet the second prong, we likewise conclude that Licensee's clean driving record for a period of 51 months met this prong. Further, we note that in the present case, the record reflects that DOT effectively suspended Licensee's operating privilege for a period of approximately 25 months following his Florida DUI arrest. At the May 11, 2017 *de novo* hearing before the trial court, Licensee submitted a letter from DOT dated September 8, 2011, notifying him that his right to a driver's license was "being denied due to information received from the State of FLORIDA," as well as a restoration requirement letter from DOT dated September 23, 2013. *See* R.R. at 121a-24a.

With respect to the third *Gingrich* factor, *i.e.*, prejudice, the trial court essentially credited Licensee's testimony that during the 37-month delay in reporting his Florida DUI conviction, Licensee established a client base with regard to a second, home healthcare job, that he had no means of maintaining this job and

10

providing care to his clients without a license, and that he "developed a lifestyle and incurred liabilities based on the assumption that he would have [the second] job." (R.R. at 97a.) We agree with the trial court that such testimony was sufficient to meet the third prong of *Gingrich*.

## Conclusion

In light of this Court's recent decision in *Middaugh*, and because Licensee presented sufficient evidence establishing that he met each of the three prongs for application of the "limited extraordinary circumstances" exception set forth in *Gingrich*, we cannot conclude that the trial court erred as a matter of law in sustaining Licensee's appeal and rescinding the one-year suspension of his operating privilege imposed by DOT.

Accordingly, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aaron Naginey                :
                                :   No. 806 C.D. 2017
         v.             :
                                  :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing,     :
                Appellant    :

## ***ORDER***

AND NOW, this 3rd day of January, 2019, the order of the Court of Common Pleas of the Seventeenth Judicial District, Union County Branch, dated May 11, 2017, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge